Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3369 | **DATE** | 4/19/2004 |
| **CASE TITLE** | West American Insurance Company vs. Dennis Tovar, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 5/20/2004 at 9:30 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment (12-1) is denied. Defendant O'Hara's motion for summary judgment (21-1) is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 2 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 33 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WEST AMERICAN INSURANCE )
COMPANY, )
 )
        Plaintiff, )
 )
v. )    No. 03 C 3369
 )    Paul E. Plunkett, Senior Judge
DENNIS TOVAR, MAUREEN TOVAR, )
KELLI TOVAR, and COURTNEY E. )
O'HARA, )
 )
        Defendants. )

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, West American Insurance Company, has filed this action seeking a declaration that the insurance policy it issued to the Tovars provides no coverage for the claims Courtney O'Hara ("Courtney") asserts against them and that it has no duty to defend the Tovars in connection with those claims. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons provided in this Memorandum Opinion and Order, both motions are denied.

**Background and Facts**

    This is not the first time these parties have been before us. Before addressing the current motions, we believe a brief history of the controversy would be useful. The following recitation is taken from our opinion at *West American Ins. Co. v. Tovar*, 2002 WL 256803 (N.D. Ill. Feb. 21, 2002) ("*West American I*") and from the memoranda of law submitted by the parties in connection

with the motions before us now. In 1999, Courtney and Kelli Tovar ("Kelli"), high school girls, were vacationing with their families together in Zihuatanejo, Mexico. Courtney and Kelli each brought a friend along on the trip. While in Mexico, one day Courtney and Kelli were both operating rented personal watercraft ("Waverunner")[1] with their friends riding as passengers. The girls collided, resulting in injuries to Courtney. Courtney sued Kelli and her parents, Dennis and Maureen Tovar, in state court seeking to recover for her injuries ("Illinois Action"). In her complaint, Courtney alleged that one of the Waverunners was rented to Kelli.

Dennis and Maureen Tovar are the named insureds on a homeowner's insurance policy issued by plaintiff, an Indiana insurance corporation. The policy excludes various claims from coverage, including those arising out of the use of certain engine-powered craft (a Waverunner, for example) that is "owned by or rented to an 'insured,'" in this case, Kelli. In 2001, plaintiff filed an action in this Court against Dennis, Maureen and Kelli Tovar and Courtney O'Hara seeking a declaration that the insurance policy it issued to the Tovars provides no coverage for the claims Courtney asserted against them and that it had no duty to defend the Tovars in connection with those claims. Plaintiff filed a motion for summary judgment, which we granted in part and denied in part. *See West American I*, 2002 WL 256803, at *9. The case was ultimately dismissed because Courtney amended her complaint in the Illinois Action to allege that she rented both Waverunners, rendering moot the controversy over whether the insurance policy absolved plaintiff of its duty to defend the Tovars.

---

[1] A personal watercraft is a vessel which uses an inboard motor powering a water jet pump as its primary source of power. It is designed to be operated by a person sitting, standing or kneeling on the vessel rather than the conventional method of sitting or standing in the vessel. Personal watercraft are often referred to by their brand names, for example, Sea-Doo, Jet Ski or WaveRunner, manufactured by Bombardier, Kawasaki and Yamaha, respectively. *See* http://www.pwia.org (website of personal watercraft industry association). Courtney and Kelli were operating Yamaha WaveRunners.

Plaintiff then undertook the defense of the Tovars in the Illinois Action pursuant to a reservation of rights and was granted leave to intervene in that case. According to plaintiff, despite Courtney's allegations that she rented both Waverunners, the deposition testimony of the parties in the Illinois Action demonstrates that she actually rented only one of the Waverunners and that Kelli rented the second one. Based on that testimony, plaintiff filed this action seeking: (1) a declaration that it has no duty or obligation to provide coverage to the Tovars for the March 1999 accident; and (2) reimbursement of costs associated with defending the Tovars in the Illinois Action.

Plaintiff has filed a motion for summary judgment. Courtney has filed a cross-motion for summary judgment. We consider the following facts, undisputed unless otherwise noted, for purposes of these cross-motions.

On March 26, 1999, Dennis Tovar gave Kelli money early in the day to ride on the Waverunner or for another purpose such as shopping or getting her hair braided. (Pl.'s LR 56.1(a) Stmt. ¶ 8.) Dennis gave Kelli tips early in the day about how to drive a Waverunner in the same flow of other traffic. (O'Hara Resp. Pl.'s LR 56.1(a) Stmt. ¶ 17.) Plaintiff believes Dennis gave her these pointers in the event she rented a Waverunner; Kelli's testimony indicates he gave her this advice "if [she goes] on a Waverunner." (Kelli Dep. at 58:23-59:1.) Dennis understood that the older girls (Courtney and her friend Shelley Morgan) would drive and the younger girls (Kelli and her friend Brenna Essary) would ride. (O'Hara Resp. Pl.'s LR 56.1(a) Stmt. ¶ 17; Dennis Dep. at 7:1-4.) Maureen Tovar gave Kelli permission to ride a Waverunner. (Pl.'s LR 56.1(a) Stmt. ¶ 9.) Maureen testified that she discussed with JoAnn O'Hara, Courtney's mother, the fact that Courtney and Shelley have drivers licenses and "should be driving these things," but she never told Kelli specifically that Kelli was not to drive one of them. (Maureen Dep. at 12:23-13:6.) Shelley testified

that she heard Maureen tell JoAnn that it was alright for Kelli to drive the Waverunners. (Shelley Dep. at 14:2-4.) Shelley also testified that she did not remember if Kelli specifically asked her mother if she could drive one of the Waverunners, but did remember that it was never suggested that Kelli should only ride as a passenger. (*Id.* at 13:9-15:7.)

Kelli understood that her mother's condition for riding a Waverunner was that she was to be a passenger, but she disregarded that condition. (Kelli Dep. at 50:1-16, 52:8-53:9.) At one time during her deposition, Courtney testified that she and Shelley decided to go on the Waverunners and Kelli and Brenna wanted to "go along." (Courtney Dep. at 16:16-18.) At a later time, however, Courtney stated that when she indicated to Kelli and Brenna that she and Shelley were going to rent Waverunners, Kelli and Brenna indicated they wanted "to rent" them also. (*Id.* at 104:11-20.) Brenna testified that the decision for Kelli to drive one of the Waverunners was "probably from the get go" but also stated that she could not remember exactly when it was decided that Kelli would drive. (Brenna Dep. at 11:23-12:3; 36:4-6.) Kelli testified that the decision regarding who would ride with whom was made when all the girls were on the beach. (Kelli Dep. at 13:4-17.)

Kelli made the decision at the Waverunner rental booth that she would drive one of the Waverunners herself. (Pl.'s LR 56.1(a) Stmt. ¶ 10.) Kelli decided that she would ride with Brenna on one Waverunner and that Courtney and Shelley would ride on the other Waverunner. (*Id.* ¶ 11.) Shelley never intended to operate one of the Waverunners. (*Id.* ¶ 31.) Shelley testified that the driving/riding arrangements among the four girls was never discussed, but Kelli testified that it was discussed on the beach. (Shelley Dep. at 64:16-24; Kelli Dep. at 13:4-17.) According to Shelley, it was always understood that Kelli was going to drive one of the two Waverunners. (Pl.'s LR 56.1(a) Stmt. ¶ 32.)

-4-

Kelli went to the Waverunner booth to find out the cost of the rental, walked back to get money from her mother, and then returned to the Waverunner booth. (*Id.* ¶ 33.) Kelli used part of the money her father gave her earlier in the day to go on the Waverunner. (*Id.* ¶ 12.) Kelli gave Courtney money to rent one of the Waverunners.[2] (Pl.'s LR 56.1(a) Stmt. ¶ 21.) Kelli handed her money to Courtney; Courtney used the money she received from her mother to pay for her and Shelley, combined it with Kelli's money and gave it all to the man [in charge] for both Waverunners. (Pl.'s LR 56.1(a) Stmt. ¶ 13; O'Hara Resp. Pl.'s LR 56.1(a) Stmt. ¶¶ 19, 20.) Without Kelli's money, Courtney could only rent one Waverunner with the money she had. (Pl.'s LR 56.1(a) Stmt. ¶ 23.) With the money she got from her mother, Courtney paid for her and Shelley. (Pl.'s Reply O'Hara's LR 56.1(b)(3)(B) Stmt. ¶ 43.) JoAnn gave Courtney money for the rental of one Waverunner to be shared by Courtney and Shelley. (Pl.'s LR 56.1(a) Stmt. ¶ 25.) JoAnn did not provide any money for the rental of a Waverunner for Kelli and Brenna.[3] (*Id.* ¶ 26.) Brenna did not contribute any money toward the Waverunner rental. (*Id.* ¶¶ 21, 27.)

Courtney did not intend to drive both Waverunners. (*Id.* ¶¶ 16, 22.) Only Courtney and Kelli drove the Waverunners; Kelli's friend Brenna rode as a passenger on the Waverunner operated by Kelli. (*Id.* ¶¶ 14, 15.) According to Courtney, the man from whom the Waverunners were rented knew that Kelli would be driving one of them with Brenna as her passenger. (*Id.* ¶ 24.)

The parties dispute whether Courtney signed a rental agreement in connection with the rental of the Waverunners. Courtney asserts that she was the only one of the four girls who signed a rental

---

[2] Both defendants O'Hara and Tovar disagree with this statement, but the testimony they cite does not contradict this statement, which is supported by the record.

[3] Defendants O'Hara and Tovar do not challenge the accuracy of plaintiff's LR 56.1(a) statements ¶¶ 25 and 26 but insist that they do not lead to the conclusion that Kelli rented one of the Waverunners.

-5-

agreement and that she does not recall signing anyone's name but hers in order to take out the Waverunners. (O'Hara LR 56.1(b)(3)(B) Stmt. ¶¶ 40, 42; Tovar LR 56.1(b)(3)(B) Ex A ¶ 5.) Plaintiff points out, however, that Courtney's testimony only states that she signed "papers," not a "rental agreement." (Courtney Dep. at 23:15.) Kelli testified that Courtney signed all four girls' names on the document (during her deposition Kelli also refers to it as a "form" and a "sign up sheet") and that Kelli offered to sign the document but that Courtney said "she would sign everybody's name." (Kelli Dep. at 17:18-24, 48:9-23; 55:10-13.) Shelley said that Courtney signed for "all of them." (Shelley Dep. at 64:8-12.)

Some facts submitted by the parties through Local Rule 56.1 are not material to the issues and therefore have not been included, e.g., the age of the girls at the time of the rental and when the collision occurred. No one has provided copies of the document signed or completed by Courtney in connection with the rental. There is no evidence regarding the terms and conditions of the rental arrangement, the identity of the man from whom the Waverunners were rented ("Lessor") or the Lessor's knowledge, understanding and intentions in renting the Waverunners.

### The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Michas v. Health Cost Controls*

*of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). The movant is not required to make an affirmative showing that there are no material facts in issue. Instead, the movant need only show an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment under Rule 56. *See United Transp Union v. Illinois Ctr. R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998).

In addition, where "'undisputed' facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) ("the choice between reasonable inferences from facts is a function of the fact-finder"). *See also Ramirez v. The Nutrasweet Co.*, 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27,1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993)).

### Discussion

We said in *West American I* that "the coverage dispute . . . boils down to one question: Was the [Waverunner] 'rented to' Kelli?" 2002 WL 256803, at *2. No one argues that Courtney did not rent at least one of the Waverunners; the question is, who rented the second one? We also said that, based on the record before us then, we could not answer the question because we lacked information from the Lessor and information about the terms and conditions of the rental. Although still lacking

-7-

information from the Lessor, we have before us now deposition testimony from many individuals. We address the merits of the cross-motions with the evidence we have.

The evidence shows that there was some paperwork involved in renting the Waverunners. Normally, we would look to the written document for the terms and conditions of the rental arrangement. *See Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952, 956 (Ill. App. Ct. 2001) (discussing Illinois contract interpretation principles). However, none of the parties has offered a rental agreement, sign-up sheet or other writing which bears on the question of who rented the second Waverunner. In addition, we have no testimony from the Lessor, the man who actually dealt with the girls in connection with the rental.[4] Therefore, we are left to view the rental of the Waverunners under basic contract principles.[5]

We look, then, for the essential elements of an agreement between Kelli and the Lessor – offer, acceptance, consideration, definite terms and an indication that the parties intended to be contractually bound. *See Yiannis, Inc. v. Madison Two Assoc.*, 1996 WL 680239, at *4 (N.D. Ill. Nov. 21, 1996); *Cotia Steel Co. v. Southlake Steel Corp.*, 1992 U.S. Dist. Lexis 7896, at *4-5 (N.D. Ill. June 4, 1992). "[T]he terms of the contract must be readily and easily ascertainable from the acts and the words of the parties." *Cotia Steel Co.*, 1992 U.S. Dist. Lexis 7896, at *5. Plaintiff, as the party asserting the existence of a rental contract between Kelli and the Lessor, has the burden of proof with respect to the existence of and terms of the agreement. *Id. See also State Farm Mut. Auto. Ins. Co. v. Schmitt*, 419 N.E.2d 601, 603 (Ill. App. Ct. 1981) (when attempting to limit liability

---

[4] We do not know, for example, if the Lessor was associated with a particular hotel, whether his operation was legitimate, how he ran his business or to whom he believed he rented the two Waverunners.

[5] The insurance policy does not define "rented to" so we give effect to the words' plain meaning. *Atchison, Topeka and Santa Fe Ry. Co. v. St. Paul Surplus Lines Ins. Co.,*, 767 N.E.2d 827, 830 (Ill. App. Ct. 2002). Being a renter of personal property implies that some kind of contractual agreement between the two parties has been reached.

-8-

under insurance contract exclusion, insurer has burden to show loss claimed falls within ambit of exclusion). With these basic principles in mind, we now evaluate whether summary judgment is appropriate for either party on the issue of whether Kelli rented the second Waverunner.

First, we note a dispute of a potential material fact, namely, the document signed by Courtney. It is disputed whether she signed only her name, as Courtney asserts, or whether Courtney signed the names of all four girls, as Kelli has testified. Moreover, as we do not know specifically what this document was, we cannot determine its significance - was it an informal sign up sheet or a rental agreement? We do not even know if the Lessor looked at the document or otherwise noticed which names were written on it or who actually took pen to paper to write those names.

Viewing the evidence in the light most favorable to plaintiff, has Courtney, as movant, demonstrated the absence of evidence to support plaintiff's case? Stated differently, has plaintiff submitted sufficiently strong evidence that a jury could reasonably find for it? *See Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991). We believe it has. Plaintiff has offered evidence from which a reasonable jury could infer that Kelli entered into a rental agreement with the Lessor for the second Waverunner. She funded the full rental amount for one of the Waverunners; in fact, Courtney could not rent the second one without Kelli's contribution and Courtney only intended to rent one machine. (Courtney Dep at 104:17-20; 105:12-19.) Kelli presented herself to the Lessor with Courtney when Courtney handed him the rental fee. This bears on Kelli's intention. In fact, the events that occurred before the interaction with the Lessor also bear on Kelli's intention to rent a Waverunner. She and Brenna decided together, but separately from Courtney and Shelley, that they wanted "to rent" or "go on" a Waverunner and Kelli went to get money to cover the rental fee after inquiring of the Lessor

about renting a Waverunner. (Courtney Dep. at 16:15-18; 17:1-5, 104:17-19; Shelley Dep. at 63:13-16; 68:23-69:6.)

In addition, Kelli was willing to sign her name to the document Courtney filled out, which one could infer means she offered to be responsible for (be "the renter of") the Waverunner, and the fact that Kelli allowed Courtney to do the physical act of writing on the document (signing the names of all four girls, including Kelli's, but a fact in dispute) could mean Courtney merely acted as Kelli's agent in writing Kelli's name, thereby obligating Kelli to the Waverunner rental. Although we did not, nor are we required to, scour the record for evidence, *see Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 n.4 (7th Cir. 2002), there is evidence that Kelli received instruction from the Lessor in the operation of the Waverunner immediately after Courtney handed over the money. (Courtney Dep. 25:16-27:23.) Courtney was nearby but did not receive instruction from the Lessor at that time. (*Id.*)

Defendants place a great deal of emphasis on the fact that Courtney actually tendered the money to the Lessor, that Courtney was the only one who signed her name to any document and that Courtney took temporary custody of both Waverunners. However, as we previously noted, it is disputed whether Courtney signed only her name or signed the names of all four girls to a document. It is hard to determine the significance of the document itself as we do not know what type of document it was. In addition, we do not find evidence that Courtney alone took possession of the two Waverunners after paying the rental fee. (Courtney Dep. at 27:22-29:10; Kelli Dep. at 16:7-12.) The fact that Courtney physically handed all the money to the Lessor does not, by itself, lead to the conclusion that she therefore rented both Waverunners. Defendants' analogy to the car rental where person B's money is used by person A to rent a car is not persuasive here because it is not undisputed that Courtney alone signed a rental agreement. (Tovar Resp. at 3-4.)

-10-

Kelli was not a passive participant in the rental transaction. A jury could reasonably infer from these facts that Kelli intended to, and did, present herself to the Lessor as the person renting the second Waverunner and it can be inferred from the acts of the Lessor, by giving instruction only to Kelli at the time of the rental, that he believed he rented the second Waverunner to Kelli. (It is not hard to imagine that the Lessor accepted Kelli as a renter, for, from the Lessor's point of view, why would Courtney rent two machines if she could operate only one at a time, and it seemed clear she was going out with friends?) We believe that plaintiff has demonstrated, through these facts, that a reasonable jury could infer that Kelli rented the second Waverunner from the Lessor.

We now address plaintiff's motion. As movant, has it demonstrated an absence of genuine issue of material fact? We do not find that it has. Viewing the evidence in the light most favorable to Courtney and the Tovars, the nonmovants, a reasonable jury could infer that Courtney rented both Waverunners. Kelli's acquiescence in letting Courtney sign only her name to the document (viewing the evidence most favorable to nonmovants) after having offered to sign it herself could imply that Kelli purposefully removed herself from any responsibility in renting the Waverunners and was content for Courtney to act as point person for the rental. The same inference can be drawn from the fact that, although Kelli accompanied Courtney to the Lessor, Kelli did not give any money to him personally; instead, she allowed Courtney to present the entire rental fee for both machines. In fact, Kelli allowed Courtney, it seems, to control the entire activity (it even seemed to be Courtney's idea originally to go on the machines that day and Kelli was following along), and only stepped in to receive instruction on how to operate the machine. A reasonable jury could infer that Kelli did not intend to rent the Waverunner and that Kelli believed she never offered or accepted anything from the Lessor in connection with the rental.

Plaintiff places too much emphasis on the fact that Kelli provided the entire rental fee for one Waverunner. Providing funds does not necessarily legally bind one to a subsequent transaction using those funds. It is but one factor relevant to the issue of whether Kelli rented the Waverunner. In addition, the facts surrounding Kelli's operation of the Waverunner, such as her actual driving of the machine and the fact that she received tips from her father about operating the machine safely, do not lead to the conclusion that Kelli rented it.

We do not believe, under these circumstances, that it is appropriate to grant summary judgment to either party. Each party, as nonmovant, carried its burden in responding to the motion for summary judgment. The significance of certain words and actions is not without doubt and the facts are subject to conflicting, yet reasonable, interpretations. Which interpretation to adopt is a task left for a jury. *See O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993).

## Conclusion

For the reasons stated above, the motions for summary judgment are denied.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: **APR 1 9 2004**